Chase J. Potter
Texas Bar No. 24088245
Joshua L. Shepherd
Texas Bar No. 24058104
Anna Olin Richardson
Texas Bar No. 24102947
potter@imcplaw.com
shepherd@imcplaw.com
anna@imcplaw.com
IACUONE MCALLISTER POTTER PLLC
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
214.432.1536

COUNSEL FOR THE AGENT AND
PROPOSED[1] SPECIAL COUNSEL FOR
AREYA HOLDER AURZADA, TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § § § | **Case No. 23-30035-mvl7** |
| **ANIMO SERVICES, LLC,** | § § | **Chapter 7** |
| **DEBTOR.** | § § § | |
| **AREYA HOLDER AURZADA, TRUSTEE,** | § § § § | |
| **Plaintiff,** | § § | **Adversary No. _____** |
| **v.** | § § | |
| **TOBY NEUGEBAUER AND MELISSA NEUGEBAUER,** | § § § § | |
| **Defendants.** | § | |

---

[1] It is intended that Iacuone McAllister Potter PLLC (the "Firm") serve as special counsel to the Trustee, and the Firm will work with the Trustee to submit an *Application to Employ* (the "Application") with the Court as soon as possible. In the interest of preserving claims, this Complaint is being filed prior the forthcoming Application.

---

**COMPLAINT**

## COMPLAINT

Pursuant to the Court-approved Agreement and Joint Prosecution Agreement,[2] GloriFi Acquisitions, LLC (the "Agent") as the exclusive agent of, and in the name of, Areya Holder Aurzada (the "Trustee"), the duly-appointed Chapter 7 Trustee for the estate (the "Estate") of Animo Services, LLC (the "Debtor"), the debtor in the above-styled and numbered chapter 7 bankruptcy case (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court" or the "Court"), files this *Complaint* (this "Complaint") against the following (collectively, "Defendants" or the "Neugebauers"): Toby Neugebauer ("Toby") and Melissa Neugebauer ("Melissa"). In support thereof, the Trustee respectfully shows as follows:

### I.       SUMMARY

1.       The Trustee seeks to avoid fraudulent transfers that occurred during the relevant clawback period (as discussed herein) prior to the Petition Date,[3] and recover such transfers from the Neugebauers (or from any other person of entity for whose benefit the transfers were made). Additionally, to the extent the Neugebauers have filed or asserted a claim against the Debtor or the Estate, the Trustee seeks to disallow that claim. The Trustee does not waive, and hereby reserves, all of her rights and the rights of the Debtor to object to any such claim by the Neugebauers, for any reason, including those reasons set forth in Sections 502(a) – (j) of the Bankruptcy Code.[4]

---

[2] *See Motion to Approve Sale of Interests in Unencumbered Causes of Action Free and Clear of Interests* [Bnky. Dkt. No. 84] and the Court's *Order Approving Sale of Interests in Unencumbered Causes of Action Free and Clear of Interests* [Bnky. Dkt. 94].

[3] As defined herein.

[4] 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code").

## II.     JURISDICTION AND VENUE

2.      The Court has jurisdiction over this matter and the relief requested herein under 28 U.S.C. §§ 157(b) and 1334. This matter presents a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and this Court may enter final orders for the relief requested herein.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 because the Debtor's chapter 7 bankruptcy case is pending in this district and the causes of action asserted herein arise in, and are related to, that case.

4.      The statutory and legal predicates for the relief sought herein are Sections 502, 544, 548, and 550 of the Bankruptcy Code, TEX. BUS. & COMM. CODE §§ 24.001, *et seq.* ("TUFTA"), and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## III.     PARTIES

5.      The Trustee is the duly appointed Chapter 7 Trustee of the Debtor and the Estate, and files this Complaint in such capacity.

6.      Defendant Toby Neugebauer ("Toby") is a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Toby may be served with process in this Adversary Proceeding anywhere that he may be found, including at his home address: 10777 Strait Lane, Dallas, Texas 75229.

7.      Defendant Melissa Neugebauer ("Melissa") is a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Melissa may be served with process in this Adversary Proceeding anywhere that she may be found, including at her home address: 10777 Strait Lane, Dallas, Texas 75229.

## IV.   FACTUAL BACKGROUND

8.   An involuntary petition for relief was filed against Debtor under Chapter 7 of the Bankruptcy Code on January 4, 2023 (the "Petition Date"). On February 9, 2023, the Bankruptcy Court entered its Order for Relief in an Involuntary Case [Bnky. Dkt. No. 12].

9.   An affiliate of With Purpose, Inc. ("WPI"),[5] the Debtor operated under an umbrella of a multitude of its additional affiliates all doing business under the name "GloriFi." The business as a whole was a finance technology start-up with the aim of developing a conservative financial platform. The intent was to ultimately offer checking and savings accounts, credit cards, mortgages, brokerage accounts, and insurance policies. With this financial platform, GloriFi worked to develop an "app" for use with mobile devices.

10.   As part of the GloriFi start-up, the Debtor's history was marred by failed attempts to complete the financial platform and monetize the business. Almost immediately after inception, the Debtor faced one liquidity crisis after another. Indeed, after March of 2022, due to Toby's relentless self-dealing and unyielding desire to singularly control GloriFi (which included Toby's removal of directors who stood between Toby and unfettered self-dealing), the Debtor was floundering. GloriFi's impressive investor base – who would have funded the bridge financing needed to close a SPAC transaction and take GloriFi public at a valuation of almost $1.7 billion but for Toby's bad acts – ultimately lost confidence in the business enterprise due to Toby's self-dealing and malfeasance. By April 2022, *at the latest*, the Debtor was insolvent. It remained insolvent throughout the remainder of its short life.

11.   During the two-year period preceding the Petition Date (the "2-Year Period"), the Debtor made transfer(s) of an interest of the Debtor's property to or for the benefit of the

---

[5]   WPI is a debtor in its own Chapter 7 bankruptcy case which is also pending in this Court as Case No. 23-30246-mvl7.

---

Neugebauers through payments totaling not less than $551,000 (collectively, the "Transfers").

12.   During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Neugebauers during the relevant clawback period. It is the Trustee's intention to avoid and recover all transfers made by the Debtor which are voidable pursuant to the Trustee's rights under the Bankruptcy Code and applicable law. The Trustee expressly reserves her right to amend this Complaint to include further information regarding the Neugebauers, the Transfers, and/or additional transfers that may become known to the Trustee at any time during this proceeding, through formal discovery or otherwise.

## V.      CLAIMS FOR RELIEF

**A.      COUNT I: Avoidance of Transfer – Fraudulent Transfer (11 U.S.C. § 548)**

13.   The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

14.   The Trustee pleads that the Transfers were fraudulent transfers. As such, the Transfers are avoidable under Section 548(a)(1)(B)(i) of the Bankruptcy Code because the Debtor made the Transfers with actual intent to hinder, delay, or defraud creditors.

15.   Specifically, at the time of the Transfers, the Debtor maintained a bank account at Frost Bank with an account number ending in 2975. On or about October 7, 2021, the Debtor transferred (1) $200,000 from its bank account to Toby's personal account at Frost Bank with an account number ending in 0285, and (2) $350,000 from its bank account to Melissa's personal account at Frost Bank with an account number ending in 0293. In addition, on or about December 17, 2021, the Debtor transferred another $1,000 from its bank account to the same bank account belonging to Melissa.

16.    At the time of the Transfers, Toby – as the control person – controlled the financial affairs of the Debtor. Upon information and belief, Melissa – Toby's spouse – was aware of Toby's control over the Debtor's bank account at Frost Bank.

17.    Upon information and belief, in June and July 2021, Melissa transferred a total of $351,000 from her personal bank account to the Debtor as purported "capital contributions." Likewise, in September 2021, Toby transferred $200,000 from his personal bank account to the Debtor as a "related party" transaction.

18.    A few short weeks later, the Neugebauers decided to treat the *Debtor's* bank account as if it was the Neugebauers' account. Specifically, on or about October 7, 2021, Toby directed the Debtor to transfer $200,000 to his personal bank account (*i.e.*, one of the Transfers). Likewise, Toby (with, upon information and belief, Melissa's knowledge and support) directed the Debtor to transfer $350,000 to Melissa's personal bank account (*i.e.*, another one of the Transfers). Apparently realizing that they missed the additional $1,000 that Melissa originally paid to the Debtor, on or about December 17, 2021, Toby directed the Debtor to transfer an additional $1,000 to Melissa's personal bank account (*i.e.*, the third of the Transfers).

19.    October 7, 2021, was a big day for the Neugebauers. First thing that morning, the Neugebauers received a $100,000 invoice from a landscaping architect to secure "plant material" for their home. Toby immediately promised that the Neugebauers would pay this invoice. Coincidentally, the Neugebauers also appear to have hosted an event for Governor Abbott at their home that evening.

20.    Evidently in need of some fast cash, the Neugebauers decided to take and pocket funds belonging to the Debtor at the expense of creditors. Even worse, Toby's control over the Debtor's financial affairs allowed him to fly under the radar as he facilitated self-interested

**COMPLAINT**                                                                                      **Page 6 of 11**

transactions for the benefit of himself and his wife. At all relevant times, upon information and belief, Melissa knew what Toby was doing and supported his wrongful actions.

21.   Accordingly, the Transfers were fraudulent under 548(a)(1)(B)(i) of the Bankruptcy Code and are therefore voidable.

22.   Further, the Transfers are avoidable under Section 548(a)(1)(B)(ii) of the Bankruptcy Code because:

a.   The Debtor did not receive a reasonably equivalent value in exchange for the Transfers; and

b.   The Debtor was insolvent at the time of the Transfers; or

c.   The Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or

d.   The Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

23.   As set forth above, the Transfers occurred on or about October 7, 2021, and December 17, 2021. Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Transfers. Even if Toby simply took out the very same money that he transferred to the Debtor weeks prior, that does not save his case. There is no indication that Toby performed any specific work for the Debtor at that time that would support such a transfer.

24.   Moreover, the Debtor appears to have received *no* value from Melissa, who appears to have had no official role or title with the Debtor but somehow took $351,000 from the Debtor's bank account that matches, dollar-for-dollar, the purported "capital contributions" she made weeks prior.

---

**COMPLAINT**

25. It is without question that in the months following the Transfers, the Debtor incurred debts beyond the Debtor's ability to pay as such debts matured. Further, at the time of the Transfers, the Debtor was about to engage in numerous transactions for which the remaining liquid assets of the Debtor were unreasonably small in relation to such transactions.

26. As such, the Trustee is entitled to avoid the Transfers.

**B. COUNT II: Avoidance of Transfer – Fraudulent Transfer (TEX. BUS. & COMM. CODE §§ 24.001, *et seq.*[6])**

27. The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

28. Pursuant to Section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, a pre-petition transfer by the Debtor that an unsecured creditor could avoid.

29. In the alternative to the foregoing, the Trustee also pleads that the Transfers were fraudulent transfers under TUFTA because:

a. The Debtor did not receive a reasonably equivalent value in exchange for the Transfers; and

b. The Debtor was insolvent at that time, or the Debtor became insolvent as a result of the transfer or obligation;

c. The Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

d. The Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

---

[6] This is the Texas Uniform Fraudulent Transfer, referred to herein as "TUFTA".

30.    Accordingly, pursuant to Section 544 of the Bankruptcy Code, the Trustee is entitled to avoid the Transfers. Moreover, pursuant to Section 24.013 of TUFTA, the Trustee is entitled to her reasonable costs and attorneys' fees in avoiding and recovering the Transfer.

**C.    COUNT III: Recovery of Voidable Transfer (11 U.S.C. § 550)**

31.    The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

32.    The Neugebauers were the initial transferees of the Transfers, or the immediate or mediate transferees of such initial transferee, or the Transfers were made for the Neugebauers' benefit.

33.    Pursuant to Section 550 of the Bankruptcy Code, the Trustee is entitled to recover the Transfers, in the total amount of $551,000, and hereby seeks a money judgment against the Neugebauers in at least that amount.

**D.    COUNT IV: Disallowance of Claim (11 U.S.C. § 502)**

34.    The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

35.    The Neugebauers are the transferees of the Transfers, which are avoidable as stated herein. As such, the Transfers are recoverable pursuant to Section 550 of the Bankruptcy Code.

36.    The Neugebauers have not paid back any portion of the Transfers.

37.    Accordingly, pursuant to Section 502(d) of the Bankruptcy Code, any Claim[7] the Neugebauers and/or their assignees may have against the Debtor or the Estate must be disallowed.

38.    Moreover, pursuant to Section 502(j) of the Bankruptcy Code, any Claim the Neugebauers and/or their assignees may have against the Debtor or the Estate which may have

---

[7] As that term is defined in Section 101(5) of the Bankruptcy Code.

---

**COMPLAINT**                                                                          **Page 9 of 11**

been previously allowed in the Bankruptcy Case, must be reconsidered and disallowed.

39.     The Trustee hereby requests that the Bankruptcy Court disallow all Claims of the Neugebauers.

**E.     COUNT V: Pre-Judgment Interest, Attorneys' Fees, and Expenses**

40.     The Trustee hereby incorporates all of the foregoing and ensuing facts and allegations as if set forth herein.

41.     The Trustee is also entitled to recover pre-judgment interest at the federal post-judgment rate from the date of the Transfers until the date of the judgment.

42.     The Trustee is also entitled to recover her reasonable costs and attorneys' fees in avoiding and recovering the Transfers pursuant to Section 24.013 of TUFTA.

## VI.     PRAYER

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Neugebauers be cited to appear and to answer this Complaint, and that the Trustee have judgment against the Neugebauers as follows:

(i)     avoidance of the Transfers, upon the law and the facts, as fraudulent transfers;

(ii)    recovery of the Transfers by way of money judgment against the Neugebauers;

(iii)   reasonable attorneys' fees and costs;

(iv)    pre-judgment interest and post-judgment interest at the highest rate allowed by law; and

(v)     such other and further relief, at law or in equity, to which the Trustee may be entitled.

Respectfully submitted,

*/s/ Chase J. Potter*

**CHASE J. POTTER**
Texas Bar No. 24088245
E-Mail: potter@imcplaw.com
**JOSHUA L. SHEPHERD**
Texas Bar No. 24058104
E-Mail: shepherd@imcplaw.com
**ANNA OLIN RICHARDSON**
Texas Bar No. 24102947
E-Mail: anna@imcplaw.com
**IACUONE MCALLISTER POTTER PLLC**
Energy Square One
4925 Greenville Ave., Suite 1112
Dallas, Texas 75206
Telephone:      (214) 432-1536

**COUNSEL FOR THE AGENT AND
PROPOSED SPECIAL COUNSEL FOR TRUSTEE**